No. 36,196

GEORGE W. BERENTZ, *Appellee,* v. THE BOARD OF COMMISSIONERS OF THE CITY OF COFFEYVILLE et al., *Appellants.*

(152 P. 2d 53)

Opinion filed September 30, 1944.

*Aubrey Neale,* of Coffeyville, argued the cause for the appellants.
*Dallas W. Knapp,* of Coffeyville, argued the cause for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is an action in mandamus, brought for the purpose of compelling the Board of Commissioners of the city of Coffey-

ville to pay the plaintiff a pension pursuant to provisions of chapters 119 and 120 of the Laws of 1939 (G. S. 1943 Supp. 13-1492 to 13-1496, inc.), providing for the payment of pensions to water and light employees in certain cities. On issues raised by the pleadings and on agreed statement of facts the trial court granted a peremptory writ of mandamus and rendered a declaratory judgment, from which order and judgment the defendants appeal.

The procedure followed by the parties in their presentation of the issues and the findings of the trial court are of such character as to make a detailed statement of the facts set forth in the pleadings wholly unnecessary. Briefly, plaintiff's petition contained allegations, which under the stipulated facts, entitled him to a peremptory writ under provisions of the statute, if valid. With respect to the defendants' pleadings it will suffice to say their answer conceded the factual situation set forth in the petition but denied liability on the ground of invalidity of such statute, while their cross petition alleged that even if valid enforcement of its provisions presented unusual circumstances and emergency features which made it impossible for them to perform their administrative duties in connection therewith without the benefit of a declaratory judgment defining the rights and duties of the parties affected by its terms. Plaintiff's reply and his answer to the cross petition each contained a general denial of all facts inconsistent with the petition but joined in defendants' request for a declaratory judgment.

Since the issues submitted to the trial court and here on appeal for our consideration can be readily discerned from the stipulated facts and the order and judgment of such court we shall quote from each of them at length.

The agreed statement of facts reads:

"It is Hereby Stipulated and agreed by and between the plaintiff and the defendants that the following are the agreed facts involved in the above entitled action.

"1. That the City of Coffeyville is a city of the first class and that the last official count of the population of said city made in 1943 was 19,157.

"2. That Montgomery County has a population of 50,692 according to the last official count made in 1943.

"3. That the defendant, J. D. Byers, is the Mayor and Charles D. Lockard and Nettie Turley are Commissioners of the City of Coffeyville.

"4. That the City of Coffeyville has owned and operated a municipal water plant for fifty years and has owned and operated a municipal light plant for forty years and that there are at present fifty-nine employees in the water and light department, nine of whom are over sixty years of age and two under sixty

who have worked over twenty-five years. That the employees of the water and light department are under Workmen's Compensation.

"5. That the plaintiff had been employed in the water and light department of the City of Coffeyville for over twenty-three years prior to the date he retired on the 16th day of September, 1939, and that on said date he was sixty-seven years of age. That his total salary for three years immediately prior to his retirement was the sum of $4,727.48 or an average of $131.32 per month. That plaintiff contributed to the Utilities Pension Fund the sum of $5.63 having paid the deduction of two per cent of his salary from July 1, 1939, to the date of his retirement.

"6. That in accordance with chapter 119 and chapter 120 of the Session Laws of 1939 the City Commissioners of the City of Coffeyville on August 1, 1939, voted to make a deduction of two percent from the salary of water and light employees for the month of July, 1939, and each month thereafter, the same to be placed in a fund called the Utilities Pension Fund. The total deductions representing the employees' contribution to the fund amount to an average of approximately $210 per month. On August 29, 1939, the City Commission adopted the rules and regulations which are attached to defendant's answer and cross petition and marked Exhibit 'A.' On September 12, 1939, the written application of the plaintiff for pension came up for discussion and was approved for the sum of $65.66 per month effective September 16, 1939. That the plaintiff was paid said amount each month including the month of October, 1943. That he has been paid nothing for the month of November, 1943, or succeeding months.

"7. That since the utilities pension law was enacted, numerous questions have arisen relative to the legality of the law and the meaning of the same. That another application for pension was filed and was pending when on November 30, 1943, the defendant commissioners stopped paying the pension to the plaintiff and refused to allow any additional pensions. That it was decided to make a test of the law and secure an interpretation before any other employees quit their work and commenced drawing pensions thereunder. That the defendant commissioners were acting in good faith to secure a decision at this time rather than to allow additional pensions and if the law was invalid or if the method used by the defendants was improper it could be determined without jeopardizing the jobs of the employees or the funds of the city. That the City of Coffeyville is still deducting the two percent required by the law and holding the same subject to a court ruling in the matter. That the balance in the hands of the City Treasurer on November 30, 1943, standing in the Utilities Pension Fund account was $6,486.43.

"8. That the parties do not have any sufficient or adequate remedy at law.

"The parties hereto respectfully submit the above and foregoing stipulation and statement of facts to the court and request that the court render a decision based upon these facts."

On the facts as stipulated the trial court rendered judgment as follows:

"(1) That J. D. Byers, Mayor, Charles D. Lockard, Commissioner and Nettie Turley, Commissioner, as the Board of Commissioners of the City of

Coffeyville, Kansas, proceed forthwith to allow and pay to George W. Berentz, a monthly pension in the sum of $65.66 for the months of November and December, 1943, and the months of January, February and March of 1944, and charge the same to the separate fund it now has on hand with the Treasurer of said city.

"(2) That the City of Coffeyville, Kansas, is now within the terms and provisions of Sections 13-1492 and 13-1493 of the 1941 Supplement to General Statutes, 1935, and said terms and provisions of said Sections shall continue to apply to said city regardless of any future increase or decrease in the population of either the City of Coffeyville or Montgomery County, Kansas.

"(3) That the rules and regulations adopted by the City of Coffeyville, Kansas, governing utilities employees pension fund, copy of which is attached to defendant's answer and cross petition, are hereby approved.

"(4) That the governing body of the city of Coffeyville, Kansas, shall annually anticipate its requirements necessary to discharge its obligation under said statute and make provision therefor when it adopts its annual budget.

"(5) That a separate Utilities Pension Fund be maintained by said city and that the City Treasurer shall act as custodian thereof and pay and disburse out of said fund all claims allowed and ordered paid by the governing body of said City for 'Utilities Employees Pensions.'

"(6) That Section 13-1492 does not include elected officials of said city, but only employees of the water or light departments within the terms and provisions of said statute and that the provision 'ten or more years' as set out in said statute relates to the length of time an employee must be actually employed before he can make application for the pension provided therein."

Because of conclusions presently to be announced the rules and regulations promulgated by the city and referred to in both the stipulation and judgment become of little, if any, importance to a determination of the rights of the parties and for that reason they will not be detailed nor will they be subsequently referred to. For the same reason, findings of the trial court just set forth, so far as they pertain to administrative duties of the appellants under the statute, likewise become unimportant and have been quoted solely for informative purposes, not because they are material to the vital issue involved in this appeal to which we now direct our attention.

The basic section of the statute on which appellee predicates his right to recovery is G. S. 1943 Supp. 13-1492, which provides:

"That whenever any person heretofore or after the taking effect of this act, shall have served as an officer or an employee in the water or light department of any city of the first class, which city has or have a population between 17,000 and 20,000 located in counties having a population of more than 47,000 and less than 51,000, or cities between 13,000 and 16,000 population, located in counties with not less than 30,000 or more than 32,000 population which operates a municipal water or light plant, for ten or more years, and shall have become incapacitated by reason of age to perform the duties of such

officer or employee, or whenever any such officer or employee of said water or light department shall become incapacitated by reason of injuries received by him while in the performance of his duties, or whenever such officer or employee has attained the age of sixty years, or has been employed twenty-five years or more, regardless of his age, the governing body of such city shall retire such officer or employee from further service in said department upon written application by such officer or employee, and said person so retired shall be allowed a pension in the sum of not less than fifty per-cent of the average salary or wages which said officer or employee had been receiving for a period of three years previous to his retirement."

As heretofore indicated, notwithstanding the cross petition prayed for a declaratory judgment and a determination of questions pertaining to rights and duties of the parties under the statute in the event it was upheld by judicial interpretation, the appellants in the court below challenged, as they do here, the entire pension act on the ground it constituted special legislation and therefore violated section 17, article 2, of our constitution, which reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

So apparent as to almost preclude the necessity for stating it is the fact that the question raised by appellants' challenge must be first disposed of before any consideration can be given to other issues presented by the pleadings. Equally apparent is the statement that if such contention is sustained all other issues must fall of their own weight since all powers granted and obligations imposed by the act are dependent upon its constitutionality.

The validity of statutory enactments when subjected to the test imposed by section 17, article 2, of our state constitution has been submitted to this court on numerous occasions and under circumstances and conditions involving diverse subjects. We shall not attempt to specifically enumerate them since practically all will be found cited in the respective opinions of the few decisions to which we shall presently refer. It should, however, be stated this court has always approached consideration of questions challenging the constitutionality of statutes with a disposition to determine them in such manner as to sustain the validity of the enactment in question. It has repeatedly recognized, as we do now, the rule that it is the duty of the court to uphold a law whenever such action is possible. In so doing it has not, however, lost sight of the fact that constitu-

tions are the work not of legislatures or of courts, but of the people, and when in its calm and deliberate judgment, free from the influences frequently responsible for legislative enactments, it determines rights guaranteed by its provisions have been encroached upon it has, with equal consistency, recognized its duty and obligation to declare those enactments in contravention of constitutional provisions. Illustrative of what has just been said is the construction placed upon the section of the constitution to which it is contended the statute under consideration is repugnant. Prior to its amendment in 1906 it was held that whether the purpose sought could be accomplished by a general act was for the legislature to decide, whereas subsequent to its adoption and the addition of the clause, "and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state," we have, regardless of how desirable a law might be to a particular community or locality, unflinchingly accepted the specific and additional duty imposed by its mandate and consistently struck down as repugnant to its terms statutory enactments which, while on the surface they might appear to be of a general nature, were on careful examination found to be so limited in their operation as to be special in fact.

In determining whether an act assailed as repugnant to that clause of section 17 of article 2 of our constitution, which directs that all laws of a general nature shall have a uniform operation throughout the state our decisions, so far as they pertain to powers possessed by the legislature in classifying the objects of legislation, have been uniform in their scope and effect. Conceding the power of the legislature to enact laws of a general nature, which will apply to a certain portion of the state only or to different communities or to divers classes of citizens, and with particular reference to cities, also conceding there may be classes and subdivisions of classes as to them, without offending the constitutional restriction as to special laws, they have nevertheless been consistent in their enunciation of the principle that such subdivisions and classifications cannot be extended so far as to produce a special result or operate unequally upon those that naturally belong to defined groups or classes. Thus in the recent and well-considered case of *State, ex rel., v. Allen County Comm'rs,* 156 Kan. 248, 133 P. 2d 165, after reference to and consideration of our earlier decisions on the subject there involved, it was held:

"The legislature has power to pass laws which apply to and operate uniformly on all members of a class, but the classification created must be natural and genuine. The classification cannot be an arbitrary or fictitious one but must be based upon distinctions which have a reasonable and substantial relation to the subject matter involved." (Syl. ¶ 1.)

As has been indicated the doctrine announced in the decision from which we have just quoted is based on no new or startling principle of law. Although differently phrased it merely reaffirms and restates a rule recognized and applied by this court in its former decisions. In the early case of *Board of Education v. Davis*, 87 Kan. 286, 123 Pac. 885, it was said:

"An act which operates on all persons and things standing in the same situation and circumstances and which may be reasonably placed in a single class is a general law, but an act is not general which arbitrarily and capriciously restricts the operation of the act to particular persons or things of a class and does not embrace or affect all which naturally belong to that class. A law may be special by being so restricted as not to include all the subjects of a class and also where it excludes subjects of a class from its operation. The supreme court of New Jersey, in defining a general law, said:

" 'A Law is to be regarded as general when its provisions apply to all objects of legislation, distinguished alike by qualities and attributes which necessitate the legislation, or to which the enactment has manifest relation. Such law must embrace all and exclude none whose condition and wants render such legislation equally necessary or appropriate to them as a class.' (*Randolph v. Wood*, 49 N. J. Law, 85, 88.)." (p. 289.)

A few of our other decisions to the same effect are, *State, ex rel., v. Deming*, 98 Kan. 420, 158 Pac. 34; *Patrick v. Haskell County*, 105 Kan. 153, 181 Pac. 611; *Ashley v. Wyandotte County Comm'rs*, 121 Kan. 408, 247 Pac. 859 and *Barker v. Kansas City*, 149 Kan. 696, 88 P. 2d 1071.

When viewed in the light of the rule laid down in the foregoing decisions, since the issue has been squarely presented by appellants, what must be our conclusion as to the validity of the enactment we have here for consideration? Is the classification attempted by its provisions based upon some apparently natural reason necessitated by circumstances and required by a real, not fictitious, difference in the condition or situation of the particular class of municipality to which it applies or is it an arbitrary, illusory and capricious classification which by its terms excludes other municipalities, to which it would naturally apply except for its own limitations? Can it be said to apply to and operate uniformly on all municipalities that would naturally belong to a defined class or does it narrow its appli-

cation, either by inclusion or exclusion, so that it produces a special situation which results in inequality and lack of uniformity of operation in that it permits benefits to some and denies them to others notwithstanding their similarity in character so far as classification requisites are concerned? A careful examination of the act and its subjection to the test required by the pertinent rule makes, in our opinion, the answer to the foregoing questions perfectly obvious. True enough, its language is couched superficially in general terms, but the peculiar restrictions of its application which are dependent not upon the population of municipalities to be affected, which as we have seen may be a proper classification, but upon the population of such municipalities within certain minimum and maximum limits when located in certain counties which also must fall within a minimum and maximum population. Without going into other restrictions to be found in the act, although much could be said on that subject, and confining our deliberation strictly to the classification applicable to appellants herein we fail to find, in the face of the uniformity clause to be found in section 17, article 2, of the constitution, any sound or substantial reason for restricting the application of a pension law to cities of the first class which have a population of not less than 17,000 or more than 20,000. Why, we inquire, the exclusion of cities of the first class having a population of not less than 15,000 to 17,000 or those having a population of not to exceed 25,000? Can we by any stretch of imagination be expected to judicially conceive any justification for such a classification or say, as we must, if the act is to be upheld the distinction so made between one class and another is real and germane to the purposes of a pension act? We think not. Neither can we envisage any circumstances or conditions which would justify us in concluding there is anything to be found in such act so unusual or peculiar as to require the conclusion it is not general in nature within the meaning of that phrase as found in the constitution or insusceptible of uniformity of operation as to municipalities when properly classified under valid legislative enactments. Even so, the additional restriction which limits application of the act only to those cities which are located in counties populated by more than 47,000 and less than 51,000 inhabitants, notwithstanding they possess the requisite municipal population mentioned, clearly demonstrates an intention its provisions shall operate only in the city of Coffeyville and possibly two or three other municipalities of the state to the exclusion of all others. It follows,

the express duty imposed on us by provisions of section 17, article 2, of our constitution, irrespective of our personal views with respect to the desirability of a pension law for municipalities based on a reasonable and proper classification with uniform operation throughout the state, makes inescapable the conclusion that chapters 119 and 120, Laws 1939, must be regarded as special legislation, and, since the subject matter covered by them is of such character as to be susceptible of regulation under a general law, are repugnant to the limitations to be found in the section of the constitution to which we have just referred.

In an effort to establish his contention the challenged enactments are valid and by their provisions created a classification which was a natural one and rested upon a genuine and substantial basis, the diligent and able counsel for appellee relies on, and cites for our consideration *Cole v. Dorr,* 80 Kan. 251, 101 Pac. 1016; *Parker-Washington Co. v. Kansas City,* 73 Kan. 722, 85 Pac. 781; *Clarke v. Lawrence,* 75 Kan. 26, 88 Pac. 735; *State, ex rel., v. Kansas City,* 125 Kan. 88, 262 Pac. 1032; *Baird v. City of Wichita,* 128 Kan. 100, 276 Pac. 77; *State, ex rel., v. McCombs,* 129 Kan. 834, 284 Pac. 618; *State, ex rel., v. Smith,* 130 Kan. 228, 285 Pac. 542; *State, ex rel., v. French,* 130 Kan. 464, 286 Pac. 204; *State, ex rel., v. Russell,* 119 Kan. 266, 237 Pac. 877; *Thompson v. Reno County Comm'rs,* 152 Kan. 610, 106 P. 2d 700 and *Rural High School v. Brown County Comm'rs,* 153 Kan. 49, 109 P. 2d 154. We have carefully examined the decisions just listed and if time and space permitted would point out distinguishing features in the statutes there involved which in our opinion make them of little value as criterions in disposing of the issue presented in the instant case. It can, however, as a general proposition, be stated, that in none of such decisions do the statutes under consideration contain the narrow and restricted classification limitations to be found in the one here involved. For decisions more in point and possessing features somewhat similar to the cause at bar see *Barker v. Kansas City,* supra, *Owens v. City of Coffeyville,* 151 Kan. 263, 98 P. 2d 415; *Panhandle Eastern Pipe Line Co. v. Miami County Comm'rs,* 151 Kan. 533, 99 P. 2d 828.

In view of our conclusion with respect to the constitutionality of the enactments under consideration it is not necessary to discuss matters presented in the briefs and dealing with questions pertaining to administrative obligations and duties of the appellant in connection therewith.

The judgment of the district court is reversed.