No. 40,228

COMMON SCHOOL DISTRICT No. 6, Wyandotte County, Kansas, a Body Corporate, *Plaintiff*, v. GEORGE W. ROBB, Auditor of the State of Kansas, *Defendant*.

(293 P. 2d 230)

Opinion filed February 7, 1956.

*John S. Dean, Jr.,* of Topeka, argued the cause, and *Donald H. Corson,* of Kansas City, and *Melvin R. Quinlan,* of Topeka, were with him on the briefs for the plaintiff.

*Fred W. Rausch, Jr.,* assistant attorney general, argued the cause, and *Harold R. Fatzer,* attorney general, was with him on the briefs for the defendant.

The opinion of the court was delivered by

WERTZ, J.: This is an original proceeding in mandamus wherein

Common School District No. 6, Wyandotte County, hereinafter referred to as plaintiff, seeks a peremptory writ of mandamus to compel defendant in his official capacity as state auditor to register bonds issued by plaintiff under the provisions of G. S. 1955 Supp., 72-2017. Inasmuch as the facts set forth in the pleadings are not in dispute, they may, as far as pertinent to the question involved, be briefly stated:

Plaintiff was one of twenty-seven common-school districts located in Wyandotte County which was provided a more liberal debt limitation by a proviso contained in the mentioned statute. This proviso permits school districts situated in counties having a population of over 150,000 and less than 200,000 to have an outstanding bonded indebtedness of not to exceed ten percent of the assessed valuation of tangible, taxable property within the district, rather than the seven percent limitation prescribed for other common-school districts in the state. Under authority granted by this act, plaintiff proceeded to perform all acts required to be done precedent to the issuance and sale of general obligation bonds of the district in the amount of $98,000 to provide funds to acquire a site, and erect and equip a school building thereon. Thereafter the bonds were delivered to defendant for registration, accompanied by a certified transcript of the proceeding. Defendant admitted the sufficiency of the proceeding and that the bonds were in proper form and duly executed, but refused to register them for the reason that he questioned the validity of the mentioned statute in that it was in the nature of a special law, where a general law could be made applicable, thereby contravening article 2, section 17 of the state constitution. It is admitted that Wyandotte County has a population of 189,465, and during the years 1950 to 1955 the census of school children in the county, excluding those in the city schools, had increased 129.19 percent, a rate of increase twice as great as that occurring during the same period in either Shawnee or Sedgwick counties.

The act (G. S. 1955 Supp., 72-2017) reads in pertinent part:

"For the purpose of purchasing or improving a site or sites, constructing, furnishing, equipping, repairing, remodeling or making additions to schoolhouses or other necessary buildings . . ., the board of any common-school district, . . . is hereby authorized to issue bonds of the district as herein provided. . . . The aggregate amount of bonds of a district outstanding at any time (exclusive of bonds specifically exempt from statutory limitations of bonded indebtedness) shall not exceed seven percent (7%) of

the assessed valuation of tangible taxable property within the district: *Provided,* In counties having a population over one hundred fifty thousand (150,-000) and less than two hundred thousand (200,000), the aggregate amount of bonds of a district outstanding at any time (exclusive of bonds specifically exempt from statutory limitations of bonded indebtedness) shall not exceed ten percent (10%) of the assessed valuation of tangible taxable property within the district. . . ."

The act is a general statute authorizing the issuance of bonds for capital improvements by common, rural and community high school districts in the state.

The sole question involved in this proceeding is whether the proviso contained in the mentioned statute, which proviso was added by the 1955 legislature, rendered it a special law enacted under the guise of a general law, or whether the classification based on population is reasonable and germane to the subject matter of the act.

The gist of defendant's contention is that the limitation in the proviso of the act is arbitrary and capricious, and that the classification so created is not natural and germane, based upon distinctions which have a reasonable and substantial relation to the subject matter involved, and he relies solely upon three of our recent decisions: *Redevelopment Authority of the City of Kansas City v. State Corp. Comm.,* 171 Kan. 581, 236 P. 2d 782; *Missouri Pacific Rld. Co. v. Board of County Comm'rs,* 172 Kan. 80, 238 P. 2d 462, and *State, ex rel., v. Tucker,* 176 Kan. 192, 269 P. 2d 447. We think it unnecessary to review at length each of the above cases in which it was held that statutes there involved violated constitutional restrictions. Reference to those cases discloses that, in each, the classification made was based not on a single population requirement but on that requirement *coupled with such other limitations* that this court was compelled to hold that by reason of the several restrictions, combined with artificial factors, the classification made was not a natural one, based upon real and substantial distinctions having relation to the subject matter of the legislation, and that by reason of the limitations the act involved contravened article 2, section 17 of the state constitution. In none of these cases did this court modify the well-established rule again applied in *State, ex rel., v. City of Topeka,* 168 Kan. 663, 215 P. 2d 644, where it was said:

"Was the classification based on population invalid? As applied to various subjects we have held a classification based *solely* on one population require-

ment does not constitute special legislation and does not contravene article 2, section 17, of our constitution." (p. 665.)

Many citations to support the rule are contained in the mentioned case. In *Redevelopment Authority of the City of Kansas City v. State Corp. Comm.*, supra, on which defendant relies, we said:

"For an act passed by the legislature to have uniform operation throughout the state as required by article II, section 17, of the state constitution, it need not affect every individual, class or community, but it is competent for the legislature to classify and adopt a law general in its nature to the class created.

"The classification so made must be a natural and not an arbitrary, fictitious or capricious one.

"Ordinarily a classification based upon population is sufficient to satisfy the constitutional requirement, but such classification must be a natural one, based upon distinctions which have a reasonable and substantial relation to the subject matter of the act." (Syl. 1, 2, 3.)

(See, also, *City of Lawrence v. Robb*, 175 Kan. 495, 265 P. 2d 317.) The mere fact that under circumstances existing at the time a statute is enacted it applies to only one city, one county or one school district, does not mean the act is a special law and, therefore, violates article 2, section 17, of our constitution, if it is reasonable that in the ordinary course of things, other governmental units may come within the operation of the act. (*State, ex rel., v. City of Topeka*, supra, and cases cited therein.) If a law applying to a specified classification of governmental units is otherwise general in form, and its provisions are such that in the ordinary course of things the law might, and probably would, apply to other governmental units coming within the specified classification, the law is a general and not a special law. (*Barker v. Kansas City*, 149 Kan. 696, 88 P. 2d 1071.) After an examination of the statute as applied to the facts in the instant case, there is no question but that the act is general in form and operates uniformly upon the members in the class to which it applies, and that in the ordinary course of time will apply to other school districts. There is no limitation in point of time so as to make its future application to other school districts so improbable as to be, in fact, impossible. The population of Wyandotte County is 189,465. With its present rate of growth, in the immediate future it will no longer come within the provisions of the act, and due to the rapid growth of the suburban districts adjoining the cities in Johnson and Shawnee counties in the foreseeable future, the act will be applicable to the school districts located therein. We must assume that the legis-

lature at the time of the passage of this act was aware of the unprecedented and unparalleled increase in rural school district population in Wyandotte County, and the dire need for additional school facilities, and a more liberal limitation on bonded indebtedness provided by the act. It is not disputed that the most populous counties in this state have experienced the greatest and most rapid increase in school population and are faced with the resulting burden of maintaining minimum school facilities. It may be assumed that when counties have a population greater than 200,000, the rapid increase in school population occurs in the city school districts, which are expanding rapidly and absorbing the rural districts.

When a classification made by the legislature is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption such state of facts exists, and one who assails the classification must carry the burden of showing by a resort to common knowledge or to matters which may be judicially noticed, or other proper proof, that the action is arbitrary. (*City of Lawrence v. Robb,* supra (p. 501); *Borden's Co. v. Baldwin,* 293 U. S. 194, 209, 79 L. ed. 281, 55 S. Ct. 187.) Under the facts in the instant case, it is clear that section 72-2017 is a statute general in form, which operates uniformly upon all members of the class affected. It contains no time limits which would obviously make it improbable for other school districts to come within the classification and, inasmuch as the classification is based *solely* upon population, it affirmatively appears that the classification is germane to the legislative purpose and bears a real and substantial relationship to the subject matter of the act. The statute in question is a general law and cannot be said to contravene article 2, section 17 of our state constitution.

Upon the entire record we conclude that the state auditor's asserted reason for refusal to register the bonds tendered is insufficient in law, and that judgment is entered in favor of plaintiff school district.

This court will retain jurisdiction, and if the bonds tendered are not registered within ten days from the filing of this opinion, a peremptory writ of mandamus will issue. The costs are taxed against the plaintiff.

HARVEY, C. J., not participating.