No. 40,567

ALFRED F. PARMELEE, *Appellant,* v. MARTIN ZIEGLER, LOU PENNER and GEORGE RUSSELL, as Board of County Commissioners of Johnson County, Kansas, *Appellees.*

(314 P. 2d 340)

Opinion filed July 31, 1957.

*Elmer B. Hodges,* of Kansas City, Missouri, argued the cause, and *James B. Pearson,* of Mission, was with him on the briefs for the appellant.

*Clark Kuppinger,* Special Counsel, of Prairie Village, argued the cause, and *John J. Gardner,* county attorney, was with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: This case stems from a decision of the Board of County Commissioners of Johnson County, Kansas, creating a road benefit district under the provisions of G. S. 1955 Supp., 68-731 (Chapter 302, Laws of 1955, Section 1). Pursuant to the provisions of G. S. 1949, 19-223, Alfred F. Parmelee appealed from such decision to the district court of the same county. There the cause was tried upon an agreed stipulation of facts and ultimately the district court in a general judgment upheld the decision of the Board of County Commissioners. This appeal followed.

Appellant's brief contains a factual statement which appellees concede is adequate to cover the facts of the case. We note it also

serves the dual purpose of disclosing the issues presented in the court below. On that account such statement, except for its first and last paragraphs referring to the statute in question and to other matters repetitious of what has been heretofore stated, will be quoted at length. It reads:

"83rd Street in Mission Township in Johnson County, the street proposed to be improved, is an arterial traffic route extending from State Line road for about 3.75 miles to Robinson, serving as the principal east-west artery for the area extending from approximately 81st Street to 87th Street and from State Line Road to Robinson. The proposed Benefit Distict here involved applied to a segment of this street extending from Lamar Avenue to a point one-fourth mile east of Lamar Avenue. The eastern limit of the portion proposed to be improved was apparently established at that point only because it was the eastern limit of platted land on the north side of 83rd Street, the land to the east being unplatted. The termination at that point had no reference to any natural or traffic feature of said street.

"At the hearing before the Board of County Commissioners on the petition for the improvement, the representative of the petitioners explained that it was planned to improve the quarter-mile covered by that petition under Section 68-731, and to improve the rest of 83rd Street from a point 940 feet west of Nall Avenue to a point one-fourth mile east of Mission Road by a proceeding under Section 68-728, G. S. of Kansas, 1949, as amended, if sufficient petitioners could be secured and if approved by the Board of County Commissioners, but that if the land adjacent to the 380 foot segment of road between the proposed Benefit District under Section 68-731 and the proposed Benefit District under Section 68-728 were included in the latter benefit district, there would not be sufficient petitioners in favor of the project to meet the requirements of the statute. On May 21, 1956, the day on which the petition was presented, the Board of County Commissioners entered its order and resolution finding that the jurisdictional requirements of Section 68-731 were met, ordering that the road be improved as prayed, creating a benefit district to be designated as Special Benefit District No. 152, and authorizing further proceedings looking toward the carrying out of said improvement.

"Appellant is the owner of a tract of land abutting 83rd Street on the south, 328.14 feet of which is included in the proposed benefit district. On June 15, 1956, appellant filed a protest against the proposed improvement with the Board of County Commissioners, and thereafter on June 18, 1956, he filed his notice of appeal from the aforesaid order and resolution of the Board in compliance with requirements of Section 19-223, G. S. of Kansas, 1949, appealing from all judicial matters and findings upon which the order and resolution was based. This notice of appeal alleged (1) the unconstitutionality of Section 68-731, as amended; (2) urged that Section 68-731, as amended, was not applicable for the reason that not all of the land on one side of the street, road or avenue sought to be improved, was platted or laid off in lots or blocks; and (3) urged that the petition did not cover the entire road to be improved but covered only a portion of same, and alleged that the project had been illegally

divided into smaller segments in order to carry out piecemeal an improvement for which the requisite petitioners could not have been obtained if the proposed improvement had been presented in its entirety.

"Thereafter, pursuant to said appeal, appellant filed a petition setting forth substantially the same points that were raised in the notice of appeal."

With salient facts and issues outlined it becomes apparent the basic statute on which the rights of the parties must stand or fall is G. S. 1955 Supp., 68-731 (Chapter 302, Laws of 1955, Section 1) which, so far as here pertinent, reads:

"In any township having a population of more than six thousand (6,000) outside of the limits of any incorporated city or town within such township, and being within any county having a population of more than twenty-five thousand (25,000) and less than two hundred thousand (200,000), where all of the land on one side of the street, road or avenue, including any adjoining or connecting street, road or avenue sought to be improved is platted or laid off in lots and blocks, then when the owners of not less than fifty percent (50%) of the frontage of land on the street, road or avenue, including any adjoining or connecting street, road or avenue present a petition to them therefor, the board of county commissioners shall have the power to provide for the construction or reconstruction of the curbing, guttering, paving, macadamizing or grading, including drainage, of any public road outside of the limits of any incorporated city whenever it shall deem the same necessary. . . ."

In passing it may be stated that the legislative enactment, of which 68-731, *supra,* is a part, is titled "AN ACT relating to roads and bridges and the improvement of roads in benefit district in certain townships, . . ."

Conceding the propriety of the population classification as to townships affected by the foregoing statute the first, and we may add the principal, contention advanced by appellant in this case is that the population limitations of such Act as to counties affected by its terms are so limited as to constitute special legislation prohibited by Article 2, Section 17 of the constitution, which reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state: *Provided,* The legislature may designate areas in counties that have become urban in character as 'urban areas' and enact special laws giving to such counties or urban areas such powers of local government and consolidation of local government as the legislature may deem proper."

In support of his position on the point now under consideration appellant first directs our attention to previous legislative enactment (See Laws of 1931, Ch. 250, Sec. 1; Laws of 1945, Ch. 270, Sec. 1;

Laws of 1949, Ch. 347, Sec. 1; Laws of 1951, Ch. 388, Sec. 1; Laws of 1953, Ch. 305, Sec. 1.), of like import except for county population classifications, and in a general way contends that the present statute (68-731) has application only to Johnson County and therefore violates the heretofore quoted section of our constitution. Since our province is to pass upon the validity of such statute as now in force and effect it is neither necessary nor required that we here labor the possibilities of what the legislature may have intended by prior legislation dealing with the same subject. When the present provisions of such statute are considered in their entirety they must be construed as having application to all townships having a population of more than 6,000 outside the limits of any incorporated city or town within such township when located in any county having a population of more than 25,000 and less than 200,000. Thus it becomes obvious that when construed in the light of its clear and unequivocal terms such statute is general in form, as well as application, and any contention it is special because it is limited to Johnson County only lacks merit and cannot be upheld.

Next, appellant directs attention to decisions holding that a law, to be regarded as general, must embrace all and exclude none whose conditions and wants render such legislation equally necessary or appropriate to them as a class; likewise that a law may be special by being so restricted as not to include all the subjects of a class and also where it excludes subjects of a class from its operation. Then, basing his position on such decisions, he contends that by reason of the limitations therein contained, especially that excluding from its operation townships in counties of over 200,000 population, the involved statute (68-731) is a special law in a situation where a general law could have been made applicable and is therefore in violation of the heretofore quoted provision of our constitution.

Notwithstanding the general rule on which appellant relies our decisions do not hold, as he contends, that where—as here—the legislature is concerned with road and/or street problems in townships having a population of more than 6,000 outside the limits of any incorporated city or town within such township, a statute which, by a population classification such as is here questioned, excludes some townships of the state from its operation is not to be regarded as a law of a general nature having uniform operation throughout the state, within the meaning of that term as used in Article 2, Section 17 of the constitution; nor does it necessarily follow that such

a statute is a special law in a situation where a general law could have been made applicable.

For just a few of the numerous decisions supporting the conclusion just announced, where many others of like import are cited, see:

*Barker v. Kansas City,* 149 Kan. 696, 88 P. 2d 1071, where, *inter alia,* it is held:

"In determining whether a law enacted by the legislature contravenes the provisions of section 17 of article 2 of the state constitution that all laws of a general nature shall have a uniform operation throughout the state, and in all cases where a general law can be made applicable, no special law shall be enacted, the following tests are to be applied:

"(a) If a law of general form operates uniformly on all members of the class to which it applies, it is not open to the objection it is a special law if the classification is not an arbitrary and capricious one.

"(b) If a law applying to a specified classification of cities or governmental units is otherwise general in its form and its provisions are such that in the ordinary course of things the law might and probably would apply to other cities or governmental units coming within the specified classification, the law is a general and not a special law." (Syl. ¶ 1.)

*Johnson County Comm'rs v. Robb,* 161 Kan. 683, 687, 171 P. 2d 784, which cites the Barker case and quotes at length the rule therein announced.

*Board of County Comm'rs v. Robb,* 166 Kan. 122, 199 P. 2d 530, which holds:

"If a law of general form operates uniformly on all members of the class to which it applies, it is not open to the objection it is a special law if the classification is not an arbitrary and capricious one, nor in such case does it contravene article 2, section 17, of the constitution of the state of Kansas." (Syl. ¶ 4.)

*Redevelopment Authority of the City of Kansas City v. State Corp. Comm.,* 171 Kan. 581, 236 P. 2d 782, where it is held:

"For an act passed by the legislature to have uniform operation throughout the state as required by article II, section 17, of the state constitution, it need not affect every individual, class or community, but it is competent for the legislature to classify and adopt a law general in its nature to the class created.

"The classification so made must be a natural and not an arbitrary, fictitious or capricious one." (Syl. ¶¶ 1, 2.)

*State, ex rel., v. Urban Renewal Agency of Kansas City,* 179 Kan. 435, 436, 437, 296 P. 2d 656, in which, with direct reference to 171 Kan. 581, *supra,* it is said:

"In the first mentioned case it was held that for an act passed by the legislature to have uniform operation throughout the state, as required by the

mentioned provision of the constitution, it need not affect every individual, class or community; that it is competent for the legislature to classify and adopt a law general in its nature to the class created, provided the classification so made be a natural one and not arbitrary, fictitious or capricious, and that ordinarily a classification based upon population is sufficient to satisfy the constitutional requirement provided it is based upon distinctions which have a reasonable and substantial relation to the subject matter of the act."

*State, ex rel., v. Allen County Comm'rs,* 156 Kan. 248, 252, 253, 133 P. 2d 165, where it is said:

"It is true the legislature has power to enact laws of a general nature which will be applicable only to a certain portion of the state, to a community or to a certain class of citizens. In other words, the legislature has power to pass laws which apply to and operate uniformly on all members of the class created, but the classification created must be a natural one and must rest upon a genuine and substantial basis. The classification cannot be an arbitrary or fictitious one but must be based upon real and substantial distinctions which have a reasonable and substantial relation to the subject matter involved. These principles frequently have been applied to legislation embracing various and sundry subjects. (citing cases.)"

See, also, the following comparatively recent cases wherein the rules announced and applied in the foregoing decisions are restated and approved: *McDonald v. Joint Rural High School District No. 9,* 180 Kan. 563, 565, 566, 306 P. 2d 175; *State, ex rel., v. Board of County Commissioners,* 180 Kan. 168, 173, 174, 302 P. 2d 542; *Common School District No. 6 v. Robb,* 179 Kan. 162, 293 P. 2d 230; *State, ex rel., v. City of Topeka,* 168 Kan. 663, 665, 215 P. 2d 644.

From the above cited decisions it is clear that if the provisions of the statute in question (68-731) create a classification that is not arbitrary and capricious such enactment is valid and does not contravene Article 2, Section 17 of the constitution. Thus, we are confronted with a problem which must be determined in the light of the long established rules of this jurisdiction governing judicial examination of any law enacted by the legislature when its constitutionality is attacked on the basis of legislative classification.

It may be stated this court has always approached consideration of questions challenging the constitutionality of statutes with the disposition to determine them in such manner as to sustain the validity of the enactment in question.

In the very first published report of this court in *State of Kansas ex rel. Crawford v. Robinson and others,* 1 Kan. 17, 18, we held:

"A statute will not be declared unconstitutional, unless its infringement of the superior law is clear, beyond substantial doubt. . . ."

See *Leavenworth Co. v. Miller*, 7 Kan. (2nd Ed.) 479, 480, which holds:

"All presumptions are in favor of the constitutional validity of a statute; and before the courts can declare it invalid, it must clearly appear to be unconstitutional." (Syl. ¶ 8.)

Later in *Glenn v. Callahan*, 125 Kan. 44, 47, 262 Pac. 583, we quoted and reapproved the rule announced in 1 Kan. 17.

Still later in *Barker v. Kansas City*, 149 Kan. 696, 698, 88 P. 2d 1071, we quoted and reaffirmed the rule announced in 7 Kan. (2nd Ed.) 479, 480, Syl. ¶ 8.

Subsequently in *Board of County Comm'rs v. Robb*, 166 Kan. 122, 199 P. 2d 530, we said:

". . . Intervenors and the auditor contend the classification is arbitrary and unreasonable. In *Borden's Co. v. Baldwin*, 293 U. S. 194, 209 L. Ed. 281, 55 S. Ct. 187, the supreme court, in an opinion by Hughes, C. J., said:

" 'When the classification by the legislature is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary. *Lindsley v. Natural Carbonic Gas Co.*, supra; *Clarke v. Deckebach*, 274 U. S. 392, 397; *Lawrence v. State Tax Comm'n*, 286 U. S. 276, 283,' (p. 209)" (pp. 132, 133.)

For a similar statement and citation of authorities in its support see the recent case of *Common School District No. 6 v. Robb*, 179 Kan. 162, 166, 293 P. 2d 230.

And for our last pronouncement on the same subject see *State, ex rel., v. Urban Renewal Agency of Kansas City*, 179 Kan. 435, 296 P. 2d 656, where it is held:

"Judicial examination of any law enacted by the legislature proceeds on the assumption that it is valid unless it contravenes an express inhibition of the constitution or one necessarily implied from some express affirmative provision of that instrument, and an act of the legislature is not to be stricken down on the ground it is unconstitutional unless infringement of the superior law is clear beyond reasonable doubt." (Syl. ¶ 1.)

When viewed in the light of the rules laid down by the foregoing decisions we are forced to conclude the classification made by the provisions of the challenged statute (68-731) is based upon an apparently natural reason and is warranted by a real, not fictitious, difference in the condition or situation of the particular class of townships to which it applies, hence it is neither an arbitrary, il-

lusory nor a capricious classification which excludes other townships to which it would naturally apply except for its limitations. Moreover, we are inclined to the view such statute creates a classification which rests upon a genuine and substantial basis and, of a certainty, are convinced that under the facts, conditions and circumstances presented to the lower court on the trial of the case the appellant failed to carry the burden of showing, as our decisions require (See, e.g., *Board of County Comm'rs v. Robb,* supra; *Common School District No. 6 v. Robb,* supra.), that legislative action with respect thereto was either arbitrary or capricious. It follows appellant's contentions respecting the invalidity of such statute cannot be upheld.

In reaching the conclusion we have not ignored but carefully considered the seven cases cited by appellant on which he relies to sustain his position the statute (68-731) is unconstitutional. They, it may be added, are:

1. *Panhandle Eastern Pipe Line Co. v. Miami County Comm'rs,* 151 Kan. 533, 537, 99 P. 2d 828.
2. *Berentz v. Comm'rs of Coffeyville,* 159 Kan. 58, 152 P. 2d 53.
3. *Redevelopment Authority of the City of Kansas City v. State Corp. Comm.,* 171 Kan. 581, 236 P. 2d 782.
4. *Missouri Pacific Rld. Co. v. Board of County Comm'rs,* 172 Kan. 80, 238 P. 2d 462.
5. *State, ex rel., v. Board of County Comm'rs,* 173 Kan. 367, 245 P. 2d 1181.
6. *State, ex rel., v. Redevelopment Authority of Kansas City,* 176 Kan. 145, 149, 269 P. 2d 484.
7. *State, ex rel., v. Tucker,* 176 Kan. 192, 269 P. 2d 447.

Nothing would be gained by detailing the distinguishing features of the foregoing decisions. It suffices to say, in a general way, that an extended examination of the opinion in each of such decisions discloses that the statutes there under consideration contained far narrower and more restricted classification limitations than those here involved and that, for that reason, we regard all such decisions as clearly distinguishable and of little, if any, value as controlling precedents in the case at bar. Indeed it may be stated that in the decisions herein above denominated 1, 3, 6 and 7 the limitations fixed by the statutes involved are applicable to one county or city only, while in those listed as 2, 3 and 4 the limitations fixed are applicable to as few as two and in no case more than three counties or cities.

Another question raised by appellant is that the trial court erred in holding that the portion of 83rd Street, sought to be improved by the road benefit district in question, comes within the meaning of the terms "street, road and avenue," as used in G. S. 1955 Supp. 68-731. In arguing this point the first statement made in appellant's brief is that "the legislature did not intend the law to be applied except in situations where all the land on one side of the street was platted." Since the conceded facts disclose that 83rd Street in Mission Township is a township road from State Street Line Road on the east from 3.75 miles to Robinson Avenue on the west, the practical result of upholding this argument would mean that the entire 3.75 miles of 83rd Street, on one side thereof, would have to be platted before the commissioners would be warranted in creating a benefit district contemplated by the Act. Obviously, sensing that the statute contemplates no such impractical result, appellant does not press the point as stated but insists such statute must be construed as requiring that boundaries of benefit districts, created under its terms, must commence and terminate at intersecting streets. We have carefully examined the statute and find nothing warranting any such construction. Therefore, since it is conceded that all of the land on one side of the portion of the street sought to be improved was platted and laid off in blocks or lots, appellant's claim of error on the point now under consideration cannot be upheld.

Another claim of error made by appellant has been given consideration. We find nothing in it or in the arguments advanced in its support which requires discussion or warrants a reversal of the judgment.

The judgment is affirmed.